**Trustees Sahar Lewis and Pluyd Coleman,**
Plaintiffs,

v.

**PNC BANK, NATIONAL ASSOCIATION,**
Defendant.



## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**Case No. 2:25-cv-00791-ART-DJA**

**RESPONSE TO MATRIX TRUST COMPANY'S MOTION TO DISMISS [ECF No. 30]
AND NOTICE OF INVOLUNTARY DISCLOSURE OF INTEREST**

---

**Plaintiffs' Limited Response and Reservation of Rights:**

Plaintiffs, proceeding *in propria persona*, respond to Matrix Trust Company's Motion to Dismiss
(ECF No. 30) as follows:

1. **Amended Complaint Does Not Currently Name Matrix Trust**:
   Plaintiffs' First Amended Complaint filed on 5/21/25 removed Matrix Trust Company as
   a named Defendant to streamline claims and focus litigation on primary culpable parties,
   specifically PNC Bank, National Association.

2. **No Action Required on Motion to Dismiss**:
   Because Matrix Trust Company is not presently a Defendant in the operative complaint,
   their Motion to Dismiss is **procedurally moot**. Plaintiffs take no substantive position at
   this time, as no cause of action is currently pending against Matrix.

3. **Notice of Involuntary Disclosure of Interest and Reservation of Rights**:
   Matrix Trust's unexpected reappearance and motion practice constitute an **involuntary
   disclosure of potential interest in the disputed instrument(s)** and underlying
   transaction. Plaintiffs **reserve all rights** to amend and reassert claims against Matrix
   Trust Company should discovery or admissions establish that it engaged in unlawful or
   fraudulent conduct, including but not limited to the unlawful transfer, securitization, or
   enforcement of the Note in violation of applicable law.

---

**CONCLUSION**

Matrix Trust Company's motion to dismiss is procedurally unnecessary at this time. Plaintiffs respectfully request the Court acknowledge their reservation of rights and deem the motion **moot without prejudice**, pending any future amendment or joinder.

Respectfully submitted,

Dated: 5/27/25

UCC 1-308
without prejudice

Sahar Lewis, Trustee
In Propria Persona

Pluyd Coleman, Trustee
In Propria Persona

Sahar Lewis, Pluyd Coleman Trustee of the Coleman Family Revocable Living Trust, et al.,
  Plaintiff(s),
v.
PNC BANK, N.A.,
Defendant.

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

Case No.: 2:25-cv-00791-ART-DJA
Document No.:

---

# NOTICE OF INVOLUNTARY DISCLOSURE OF INTEREST AND RESERVATION OF RIGHTS TO JOIN MATRIX TRUST COMPANY AS A NECESSARY PARTY UNDER FRCP 19(a)

Plaintiff Sahar Lewis, Trustee of the Coleman Family Revocable Living Trust ("Plaintiff"), respectfully submits this Notice to the Court in response to **Matrix Trust Company's Motion to Dismiss [ECF No. 30]**, and hereby states the following:

## 1. Matrix Trust's Reappearance Constitutes an Involuntary Disclosure of Interest

Matrix Trust Company ("Matrix") was **served with the original Complaint**, but was not named in the Amended Complaint filed on 5/21/25  Despite this, Matrix has now **voluntarily entered an appearance and filed a Motion to Dismiss [ECF No. 30]**, asserting a legal position regarding the claims and underlying transactions alleged in this matter.

Such action constitutes **an involuntary disclosure of an existing or latent interest** in the subject matter of the dispute—specifically, the promissory note, deed of trust, and/or securities derived therefrom.

## 2. Potential Involvement in Unauthorized Transfer or Securitization

Upon further investigation and preparation of Plaintiff's evidentiary submissions (including forthcoming **Exhibit B**), it appears that Matrix Trust Company may have:

- **Held, transferred, traded, or facilitated the sale** of the Plaintiff's promissory note;
- Acted as an **unregistered securities intermediary** in the absence of Plaintiff's consent;
- **Benefited from or participated in** the securitization, misrepresentation, or unauthorized enforcement of the note in collusion with PNC Bank or other agents.

These activities, if proven, form a material basis for **securities fraud, unjust enrichment, conversion, and fraudulent misrepresentation**.

## 3. Reservation of Rights to Join Matrix Trust as a Necessary Party

Pursuant to **Fed. R. Civ. P. 19(a)**, the Court must join any person or entity that:

- **Claims an interest relating to the subject of the action**, and
- Whose absence may impair or impede the person's ability to protect the interest or
- Leave an existing party subject to **a substantial risk of incurring inconsistent obligations**.

Plaintiff **reserves all rights** to **amend the complaint** and **join Matrix Trust Company as a party** under Rule 15 and Rule 19 based on newly surfaced disclosures, pending forensic examination of securitization records and contractual chains of title.

## 4. Request for Judicial Notice of Matrix's Involvement

Plaintiff respectfully requests that the Court take **judicial notice** of:

- Matrix Trust's appearance and filing [ECF No. 30],
- Matrix's implicit or actual admission of an interest or role in the matter,
- Matrix's current motion as a declaration of interest and active defense.

## CONCLUSION

Matrix Trust Company's unsolicited entry and motion to dismiss, despite being excluded from the Amended Complaint, constitutes a material and involuntary disclosure of interest in the subject matter. Plaintiff therefore gives **formal notice to the Court and opposing counsel** of Plaintiff's intent to **reserve rights to amend and include Matrix as a necessary party**, should discovery or further investigation reveal actionable involvement.

Dated: 5/27/25

Respectfully submitted,

By: *Sabar – Amanda: Lewis*    UCC 1-308 without Prejudice
**Sabar Lewis**

By: *Pluy Coleman*    UCC 1-308
**Pluy Coleman**

Trustees, CFRLT in pro per Plaintiff
3139 Belvedere Dr Henderson Nevada [89014]
702-272-9990
thecolemanfamilytrust@gmail.com

**Trustees Sahar Lewis and Pluyd Coleman,**
 Plaintiffs,
v.

**PNC BANK, NATIONAL ASSOCIATION, et al.,**
 Defendants.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**Case No. 2:25-cv-00791-ART-DJA**

**NOTICE OF INTERESTED PARTIES**

---

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Pursuant to **Local Rule 7.1-1**, Plaintiffs **Sahar Lewis and Pluyd Coleman**, appearing *in propria persona* as Trustees of the **Coleman Family Revocable Living Trust**, submit the following **Notice of Interested Parties**:

The undersigned certifies that the following may have a direct, pecuniary interest in the outcome of this case. These representations are made to enable the Court to evaluate possible disqualification or recusal:

1. **PNC Bank, National Association** – Defendant and alleged loan servicer;
2. **Matrix Trust Company** – Alleged trustee or securitization agent in dispute over Note interest;
3. **Coleman Family Revocable Living Trust** – Plaintiff trust and titleholder to the real property in question;
4. **Sahar Lewis and Pluyd Coleman** – Trustees of the Plaintiff Trust and authorized representatives in this matter.

The undersigned affirms that, other than the above, there are no known interested parties at this time.

Dated: 5/27/25

Respectfully submitted, *[signature] ucc 1-308*
Sahar Lewis, Trustee  In Propria Persona

*[signature] ucc 1-308*
Pluyd Coleman, Trustee  In Propria Persona

# EXHIBIT A

Matrix Trust Company's Motion to Dismiss (Involuntary Appearance)

Filed as Document No. 30 in Case No. 2:25-cv-00791-ART-DJA

United States District Court, District of Nevada

This exhibit contains the Motion to Dismiss filed by Defendant Matrix Trust Company, which filed this motion after the filing of the First Amended Complaint that named only Defendant PNC Bank. Matrix Trust Company's motion is attached for reference and response purposes, highlighting their involuntary appearance in this matter.

EX A

1  Aaron D. Shipley (NSBN 8258)
   Karyna M. Armstrong (NSBN 16044)
2  McDONALD CARANO LLP
   2300 West Sahara Avenue, Suite 1200
3  Las Vegas, Nevada 89102
   Telephone: (702) 873-4100
4  ashipley@mcdonaldcarano.com
   karmstrong@mcdonaldcarano.com
5
   *Attorneys for Defendant Matrix Trust Company*
6
                    **UNITED STATES DISTRICT COURT**
7
                        **DISTRICT OF NEVADA**
8
   Coleman Family Revocable Living Trust, by and     | Case No. 2:25-cv-00791-ART-DJA
9  through Trustees Sahar Lewis and Pluyd Coleman,    |
                                                       | **MATRIX TRUST COMPANY'S**
10                    Plaintiff,                        | **MOTION TO DISMISS**
11        v.
12 PNC Bank, N.A., Matrix Trust Company, Clear
   Recon Corp., Stefanie Armijo, Does 1 through 20,
13
                     Defendants.
14

15        Defendant Matrix Trust Company ("Matrix"), by and through its undersigned attorneys,

16 respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice

17 Plaintiffs' Complaint ("Complaint"). As explained herein, Plaintiffs have failed to provide sufficient

18 factual allegations to support their claims against Matrix. Accordingly, Plaintiffs' Complaint must

19 be dismissed.

20        This Motion is made based on the following memorandum of points and authorities and any

21 oral argument entertained by the Court at the time of the hearing on this motion.

22        Dated this 27th day of May, 2025.

23                                           McDONALD CARANO LLP

24                                           By: */s/ Aaron D. Shipley*
25                                               Aaron D. Shipley (NSBN 8258)
                                                 Karyna M. Armstrong (NSBN 16044)
26                                               2300 West Sahara Avenue, Suite 1200
                                                 Las Vegas, Nevada 89102
27                                               ashipley@mcdonaldcarano.com
                                                 karmstrong@mcdonaldcarano.com
28
                                             *Attorneys for Defendant Matrix Trust Company*

*McDONALD CARANO*
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should dismiss this case with prejudice under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to state any legally cognizable claim. Even when construed liberally, the gravamen of Plaintiffs' Complaint is a demand for $180,000,000.00 in damages based on an alleged wrongful foreclosure and sale of the subject property. However, Plaintiffs have not pled sufficient factual allegations to support any viable cause of action against Matrix. Accordingly, the Court should dismiss Plaintiffs' Complaint in its entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Based on the allegations in the Complaint, Plaintiffs seek to halt the foreclosure and sale of the real property located at 3139 Belvedere Drive, Henderson, Nevada 89104 (the "Property"). *See* Compl. at ¶¶ 1, 19–21. Plaintiffs allege they acquired title to the Property through the Coleman Family Revocable Living Trust (the "Trust"), for which Plaintiffs Sahar Lewis and Pluyd Coleman serve as Trustees. *Id.* at ¶¶ 1, 9. According to the Complaint, Plaintiffs notified PNC Bank, N.A. ("PNC") of the Property transfer and, as Trustees, accepted "all rights, title, benefits, interests, and equity owed." *Id.* at ¶¶ 10, 12. Plaintiffs further contend that the debt associated with the Property was discharged under UCC § 3-603 due to PNC's alleged failure to honor the transfer instrument. *Id.* at ¶¶ 14–15. Subsequently, Plaintiffs issued a Qualified Written Request ("QWR") to PNC, seeking a forensic accounting of the associated loan account. In response, PNC purportedly provided certain documentation. *Id.* at ¶¶ 16–18. On December 2, 2024, a Notice of Default was recorded against the Property. *Id.* at ¶ 20. Following Plaintiffs' failure to make payment, a Notice of Trustee's Sale was issued on March 27, 2025, scheduling a foreclosure sale approximately thirty (30) days later. *Id.* at ¶¶ 20–21.  No specific factual allegations were asserted against Matrix.

On April 9, 2025, Plaintiffs filed a Complaint in the Eighth Judicial District Court for Clark County, Nevada, initiating Case No. A-25-916476-C (the "State Action"), asserting nine (9) causes of action against Defendants PNC, Matrix, Clear Recon Corp., and Stefanie Armijo. *Id.* The causes of action include: (1) wrongful foreclosure, (2) breach of contract, (3) violations of the Real Estate Settlement Procedures Act ("RESPA"), (4) securities fraud and misrepresentation, (5) quiet title, (6)

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD ⚜ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    injunctive relief, (7) declaratory relief, (8) emergency relief, and (9) slander of title. Plaintiffs seek

2    monetary damages in the amount of $180,000,000.00, as well as punitive damages, attorneys' fees

3    and costs (despite proceeding pro se), declaratory relief quieting title, and injunctive relief enjoining

4    the foreclosure. *Id.*

5        On April 18, 2025, Plaintiffs moved to Invoke Equity Jurisdiction, Enter Constructive Trust,

6    and Accept Administrative Default. That same day, they also moved for Order Shortening Time to

7    hear an Emergency Motion for Temporary Restraining Order ("TRO"). On May 2, 2025, the state

8    court entered an order setting a hearing on Plaintiffs' Emergency Motion for TRO. On May 6, 2025,

9    PNC removed the State Action to the United States District Court pursuant to 28 U.S.C. § 1332

10   based on diversity jurisdiction. On May 22, 2025, the state court entered an order denying Plaintiffs'

11   emergency motions in light of the removal to federal court.

## III.   ARGUMENT

### A.   Legal Standard.

14       To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted

15   as true, to 'state a claim to relief that is plausible on its face.'" *Underwood v. O'Reilly Auto Parts,*

16   *Inc.*, 671 F. Supp. 3d 1180, 1187 (D. Nev. 2023) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678

17   (2009)). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court

18   to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

19   U.S. at 678.

20       While plaintiffs are not required to provide "detailed factual allegations," Rule 8 of the

21   Federal Rules of Civil Procedure demands "more than an unadorned, the-defendant-unlawfully-

22   harmed-me accusation." *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

23   Moreover, a court should not "assume the truth of legal conclusions merely because they are cast in

24   the form of factual allegations." *Tyla D. v. MGM Resorts Int'l*, No. 2:24-CV-00698-APG-BNW,

25   2024 WL 4839744, at *2 (D. Nev. Nov. 19, 2024) (quoting *Navajo Nation v. Dep't of the Interior*,

26   876 F.3d 1144, 1163 (9th Cir. 2017)).

27       "[A] plaintiff's obligation to provide the grounds of [their] entitlement to relief requires more

28   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

1    do." *Twombly*, 550 U.S. at 555 (internal quotations omitted). In other words, "[f]actual allegations

2    must be enough to raise a right to relief above the speculative level." *Id.* A "plausibility"

3    determination is a context-specific task that requires the reviewing court to draw on its judicial

4    expertise and common sense." *Iqbal*, 556 U.S. at 679.

5          **B.    Plaintiffs Failed to Include Sufficient Factual Allegations to Support Their Causes of Action.**

6

7           *1.    Wrongful Foreclosure.*

8        "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish

9    that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition

10   or failure of performance existed on the mortgagor's or trustor's part which would have authorized

11   the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev.

12   284, 304, 662 P.2d 610, 623 (1983) (internal quotations and citations omitted); *see also Aguilar v.*

13   *WMC Mortgage Corp.*, No. 2:09-CV-01416-ECR-PAL, 2010 WL 185951, at *2 (D. Nev. Jan. 15,

14   2010 (dismissing wrongful foreclosure claim because plaintiffs "were delinquent on their mortgage

15   payments"). The critical factual issue in a wrongful foreclosure claim is whether the trustor was in

16   default at the time the power of sale was exercised. *Id.*

17       In this case, Plaintiffs have failed to allege facts demonstrating that they were not in default

18   on the loan secured by the Property and held by PNC. *See generally* Compl. Plaintiffs merely offer

19   a conclusory assertion that "Defendants lack legal standing to foreclose due to the discharged debt

20   and failure to validate the loan." *Id.* at ¶ 23. However, the allegations concerning the purported

21   discharge of the debt are directed solely at PNC and do not implicate Matrix. *Id.* at ¶¶ 14–15.

22   Accordingly, because Plaintiffs have not provided sufficient facts to support a claim for wrongful

23   foreclosure against Matrix, this claim must be dismissed.

24          *2.    Breach of Contract.*

25       Under Nevada law, breach of contract is a "material failure of performance of a duty arising

26   under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734 P.2d 1238,

27   1240 (1987) (citation omitted). To establish breach of contract, a plaintiff must show: "(1) the

28   existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach."

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138, 1141 (D. Nev. 2014) (quotations and citation omitted).

Here, Plaintiffs have failed to allege facts sufficient to establish the existence of a valid contract—an essential element of a breach of contract claim. Rather than identifying a specific contractual agreement between the parties, Plaintiffs assert that the alleged "[n]otice of the Trust transfer" constituted "a negotiable instrument in good faith." Compl. at ¶¶ 10, 13. They further offer a generalized and conclusory allegation that they "performed under the contract and Defendants failed to honor the negotiable instrument." *Id.* at ¶ 25. However, Plaintiffs provide no factual detail regarding the formation, terms, or breach of the purported contract, nor do they allege when or how any breach occurred.

Accordingly, because Plaintiffs have not provided sufficient facts to support the existence of a valid and enforceable contract or a breach thereof, their breach of contract claim fails as a matter of law and must be dismissed.

     *3.*     *RESPA Violation.*

Plaintiffs appear to assert a claim under the Real Estate Settlement Procedures Act ("RESPA"), alleging that Defendants failed to validate their security interest following a purported Qualified Written Request ("QWR"). Compl. at ¶ 17. However, Plaintiffs lack standing to bring this claim against Matrix. Even accepting Plaintiffs' allegations as true, they have failed to demonstrate that they suffered any actual damages—an essential element of a RESPA claim. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016). RESPA expressly requires a plaintiff to show that they sustained actual damages as a result of the alleged violation. *See* 12 U.S.C. § 2605(f)(1).

First, Plaintiffs' allegations concerning the alleged RESPA violation are directed solely at Defendant PNC, not Matrix. *See* Compl. at ¶¶ 13–18. Second, even assuming that Plaintiffs intended to assert this cause of action against Matrix—which they clearly have not—the Complaint still fails to allege any specific facts showing that Plaintiffs suffered damages as a direct result of the purported failure to respond to the QWR. Indeed, Plaintiffs acknowledge that PNC did respond to their request by providing documents. *Id.* ¶ 18.

1   Accordingly, Plaintiffs have neither stated a valid claim under RESPA against Matrix nor

2   alleged any resulting damages. As such, this claim must be dismissed.

3              *4.      Fraud and Misrepresentation.*

4   "To prove fraud in Nevada, a plaintiff must show by clear and convincing evidence the

5   following elements: (1) a false representation (2) which the defendant knew to be false, (3) made

6   with the intention of inducing the plaintiff to act in reliance upon the misrepresentation, and (4) upon

7   which the plaintiff does in fact rely (5) to his detriment." *Laidman v. Clark*, No. 2:11-CV-00704-

8   LRH-PAL, 2013 U.S. Dist. LEXIS 17430, at *5, 2013 WL 508169, at *5 (D. Nev. Feb. 8, 2013).

9   Moreover, under Federal Rule of Civil Procedure 9(b), allegations of fraud must be pled with

10  particularity. The complaint must "be specific enough to give defendants notice of the particular

11  misconduct which is alleged to constitute the fraud charge so that they can defend against the charge

12  and not just deny that they have done nothing wrong." *Magee v. California*, 236 F.3d 1014, 1019

13  (9th Cir. 2001) (internal quotation and citation omitted).

14  Here, Plaintiffs' fraud allegations fall far short of this standard. The sole statement in the

15  Complaint referencing fraud is a conclusory assertion that "Defendants misrepresented their lawful

16  ability to enforce the Note." Compl. at ¶ 27. This allegation lacks any of the required detail

17  concerning who made the alleged misrepresentation, when and where it was made, how it was false,

18  and how Plaintiffs relied on it to their detriment. Because Plaintiffs have neither pled fraud with the

19  specificity required by Rule 9(b) nor alleged facts sufficient to satisfy the substantive elements of

20  fraud under Nevada law, this cause of action must be dismissed.

21             *5.      Quiet Title.*

22  A quiet title action in Nevada is an in rem or quasi in rem proceeding governed by NRS

23  40.010, which provides: "An action may be brought by any person against another who claims an

24  estate or interest in real property, adverse to the person bringing the action, for the purpose of

25  determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 129 Nev. 314, 302

26  P.3d 1103, 129 Nev. Adv. Op. 34 (2013). While a quiet title claim does not require a rigid set of

27  elements, it is well established that "each party must plead and prove his or her own claim to the

28  property in question," and a plaintiff's right to relief "depends on the superiority of title." *Yokeno v.*

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992); *see also Hodges Transp., Inc. v. Nevada*, 562 F. Supp. 521, 522 (D. Nev. 1983).

Here, Plaintiffs fail to allege sufficient facts to support a quiet title claim. The Complaint merely states that Plaintiffs "seek to quiet title against Defendants' adverse claims." Compl. at ¶ 28. This assertion is unsupported by any factual allegations demonstrating Plaintiffs' interest in the property, the nature of the alleged adverse claims, or the superiority of Plaintiffs' title. Plaintiffs do not attach or reference any recorded deed, trust instrument, or other documentation evidencing a present interest in the property. Because Plaintiffs have not asserted facts establishing their own title, nor have they demonstrated that their claim is superior to any adverse interest, their cause of action for quiet title must be dismissed. *See Yokeno*, 973 F.2d at 808.

> 6.   *Injunctive Relief and Emergency Relief – TRO and Preliminary Injunction.*

Matrix is entitled to dismissal of Plaintiffs' purported causes of action for preliminary injunction, injunctive relief, and emergency relief, as such claims are not standalone causes of action under Nevada law. Rather, injunctive relief is a remedy that may be awarded in connection with an underlying substantive claim. *See State Farm Mut. Auto. Ins. Co. v. Jafbros, Inc.*, 109 Nev. 926, 928, 860 P.2d 176, 178 (1993). As the Nevada Supreme Court has explained, injunctive relief is available "to restrain a wrongful act that gives rise to a cause of action." *Chateau Vegas Wine, Inc. v. S. Wine & Spirits of Am., Inc.*, 127 Nev. 818, 824, 265 P.3d 680, 684 (2011). Accordingly, Plaintiffs cannot maintain an independent cause of action solely for injunctive or emergency relief.

Even assuming, that such claims could be construed as independent causes of action, dismissal is still warranted because Plaintiffs have failed to allege irreparable harm—a necessary prerequisite for injunctive relief. "Irreparable harm is an injury for which compensatory damages are an inadequate remedy." *Excellence Cmty. Mgmt. v. Gilmore*, 131 Nev. 347, 353, 351 P.3d 720, 723 (2015) (internal quotation marks and citation omitted). Plaintiffs' Complaint contains no factual allegations establishing that Matrix has caused them any harm, let alone irreparable harm. Indeed, the Complaint is devoid of any specific assertions that would satisfy this standard.

For these reasons, Plaintiffs' claims for emergency relief and injunctive relief must be dismissed.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

7.      *Declaratory Relief.*

Plaintiffs seek a declaratory judgment that "Defendants have no lawful interest in the property." Compl. at ¶ 30. However, under Nevada law, declaratory relief is available only when the following elements are satisfied: (1) a justiciable controversy exists between parties with adverse legal interests; (2) the party seeking declaratory relief has a legally protectable interest in the controversy; and (3) the issue is ripe for judicial determination. *Cnty. of Clark ex rel. Univ. Med. Ctr. v. Upchurch*, 114 Nev. 749, 752, 961 P.2d 754, 757 (1998) (citing *Knittle v. Progressive Cas. Ins. Co.*, 112 Nev. 8, 10, 908 P.2d 724, 725 (1996)). Furthermore, "litigated matters must present an existing controversy, not merely the prospect of a future problem." *Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443, 444 (1986).

Plaintiffs' claim fails to satisfy these requirements. Notably, they do not allege any facts establishing that they possess a legally protectable interest in the property at issue. *See generally* Compl. Instead, Plaintiffs offer only a conclusory request for "a declaration that Defendants have no lawful interest in the property," without providing any supporting factual allegations or legal analysis to justify the requested relief. Plaintiffs' failure to articulate the nature of their own interest—or to explain why the Court should resolve the question of title—renders the claim insufficient as a matter of law.

Accordingly, because Plaintiffs have not established a justiciable controversy or a legally protectable interest in the property, their cause of action for declaratory relief must be dismissed.

8.      *Slander of Title.*

Plaintiffs' slander of title claim fails as a matter of law. Under Nevada law, to prevail on a slander of title claim, a plaintiff must establish: (1) that the defendant made a false and malicious communication that disparaged the plaintiff's title to property; and (2) that the plaintiff sustained special damages as a result. *Day v. Longvue Mortg. Capital Inc.*, No. 2:19-cv-02072-GMN-VCF, 2020 WL 3196715, at *4 (D. Nev. June 12, 2020).

Plaintiffs' Complaint contains no allegations that Matrix or any of the other Defendants made any false or malicious statements concerning Plaintiffs' title to the property. *See generally* Compl. In fact, Plaintiffs fail to allege that any communication from Defendants occurred at all—let alone

McDONALD ● CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 ● LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 ● FAX 702.873.9966

1   one that could be construed as defamatory or disparaging to Plaintiffs' interest in the property. This

2   omission alone is fatal to their claim. Because Plaintiffs have not identified any allegedly disparaging

3   communication, they likewise fail to allege the requisite element of special damages. *See Day*, 2020

4   WL 3196715, at \*4. Absent any factual allegations supporting either element of the claim, Plaintiffs

5   have not stated a viable cause of action for slander of title.

6        Accordingly, Plaintiffs' slander of title claim must be dismissed.

7   **IV.    CONCLUSION**

8        For the foregoing reasons, Matrix respectfully requests that this Court dismiss Plaintiffs' first

9   through ninth claims for relief asserted against Matrix for failure to state a claim upon which relief

10  can be granted.

11       Dated this 27th day of May, 2025.

12                          McDONALD CARANO LLP

13                          By: /s/ Aaron D. Shipley

14                              Aaron D. Shipley (NSBN 8258)
                                Karyna M. Armstrong (NSBN 16044)
15                              2300 West Sahara Avenue, Suite 1200
                                Las Vegas, Nevada 89102
16                              Telephone: (702) 873-4100
                                ashipley@mcdonaldcarano.com
17                              karmstrong@mcdonaldcarano.com

18                              *Attorneys for Defendant Matrix Trust Company*

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May, 2025, a true and correct copy of **MATRIX TRUST COMPANY'S MOTION TO DISMISS** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By: */s/ Shilah Bettinger*
An employee of McDonald Carano LLP

Exhibit B

Tender of Promissory Note & Declaration of Tender

This exhibit contains the lawful tender of a negotiable instrument issued by Sahar Lewis, Trustee of the Coleman Family Revocable Living Trust, as full and final payment of the alleged debt secured by the Deed of Trust on the property at 3139 Belvedere Dr, Henderson, NV.

This package includes the Declaration of Tender, the original instrument, and mailing evidence of delivery to the indentured trustee. Said tender was made in good faith and in accordance with UCC § 3-603, and its dishonor constitutes breach of contract and securities fraud under 15 U.S.C. § 77q(a).

# Exhibit B – Promissory Note Tender & Declaration of Tender

## Contents:

1. **Cover Page (Exhibit B)**
2. **Declaration of Tender by Sahar Lewis** *(sworn statement under penalty of perjury)*
3. **Copy of the Promissory Note** *(front and back, signed)*
4. **Tender Instruction Letter** *(sent with the instrument)*
5. Copy of 10k form showing indentured trustee bank matrix Trust and trustee Stefanie Armijo
6. **Registered Mail Proof** *(receipt, tracking printout, green card if returned)*

DECLARATION OF TENDER
(Sworn Affidavit – Pursuant to 28 U.S.C. § 1746)

I, Sahar Lewis, Trustee of the Coleman Family Revocable Living Trust, do hereby declare and affirm under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. On or about 3/3/25, I executed a lawful negotiable instrument (promissory note), backed by my full faith and credit, in an amount sufficient to satisfy and discharge the full balance of the alleged debt obligation claimed under the Deed of Trust on the property located at:

**3139 Belvedere Dr, Henderson, Nevada 89014.**

2. This instrument was issued and tendered in good faith to the indentured trustee *Matrix Trust Comp* Trustee for PNC Bank** (Attn: Stefanie Armijo), via **Registered Mail No. RF603899505US, along with written instructions explicitly stating that said instrument was to be applied as final settlement of the obligation.

3. The mailing package was delivered on or about March 6, 2025, as confirmed by postal tracking records. No rebuttal, lawful objection, or accounting was provided by the Defendants in response.

4. The failure to apply, acknowledge, or return said instrument constitutes dishonor, breach of trust, and securities fraud, as the Defendants have continued to act as if the debt remains valid while monetizing the security for their own benefit.

5. At no time did I waive or abandon any rights, interest, or equity in the subject matter. I stand in full commercial capacity, and all rights are expressly reserved.

Executed this 27th day of May, 2025, in Clark County, Nevada.

Signature: *By: Sahar—Amanda; Newey*          *UCC 1-308 without prejudice*
**Sahar Lewis** / Trustee
Coleman Family Revocable Living Trust
3139 Belvedere Dr
Henderson Nevada [89014]

Subscribed and sworn under 28 U.S.C. § 1746 – "Under penalty of perjury, I declare the foregoing to be true and correct."

Loan Number: 7361110206

MIN: **101267073611102063**

# NOTE

The undersigned hereby certifies this
to be a true & correct copy of the
Original
FIDELITY NATIONAL TITLE
AGENCY OF NEVADA, INC.

By

December 7, 2021

**HENDERSON, NEVADA**

**3139 BELVEDERE DRIVE
HENDERSON, NEVADA 89014**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $270,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **NORTH AMERICAN FINANCIAL CORP., A CORPORATION.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on **February 1, 2022.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on January 1, 2052, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**NORTH AMERICAN FINANCIAL CORP.
375 N STEPHANIE STREET, Building 18
HENDERSON, NV 89014**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,212.42.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200   1/01

IDS, Inc. - 31956

Borrower(s) Initials

Loan Number: 7361110206                                    MIN: 101267073611102063

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

---

Loan Number: 7361110206

MIN: 101267073611102063

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
SAHAR LEWIS                     -Borrower

_____ (Seal)
                               -Borrower

*(Sign Original Only)*

Loan originator (Organization): NORTH AMERICAN FINANCIAL CORP.; NMLS #: 180736
Loan originator (Individual): KYLE BARRETT TAPP; NMLS #: 999999

Pay to the order of
without recourse
By: Sahar Amanda Lewis
SAHAR LEWIS
Sahar Amanda Lewis
Agent Beneficiary

Pay to the order of: PNC Bank

By: /Ashlar-Amanda: Lewis

# ALLONGE TO PROMISSORY NOTE

I am the agent Lewis :Sahar-Amanda on behalf of the principal SAHAR
LEWIS. I accept all titles rights and interest in equity owed to the principal. I
instruct the CFO to apply the principal SAHAR LEWIS balance to the
principal SAHAR LEWIS account for set off.  You have 10 days to perform
your duty, failure to respond will constitute a Breach of Contractual Fiduciary
responsibility and may result in legal action.

By: Sahar-Amanda:Lewz , without recourse)

UCC 1-308

2/27/2025

Sahar Lewis
3139 Belvedere Dr.
Henderson NV [89014]

PNC BANK TRUSTEE
Vice President Stefanie Armijo
Matrix Trust Company
717 17th Street Suite 1300
Denver CO [80202]

COPY:
Attn: General Counsel
Broadridge Financial Solutions, INC
2 Journal Square Plaza Jersey City, NJ []

Attn: Senior Vice President Peggy Chevako
The PNC Financial Services Group, INC
Attention: Executive Services Department
One PNC Plaza
249 Fifth Avenue, 21st Floor Mailstop: P1-POPP-21-B Pittsburgh, PA 15222


ATTN Indentured Trustee and all agents whom it may concern:

This letter serves as instructions for PNC Bank Indentured Trustee, Stefanie Armijo, as directed by Sahar Lewis, the beneficiary on behalf of the principal SAHAR LEWIS for PNC Bank Account # 1000783829.

In this envelope you will find:
1. The endorsed Promissory Note for the account number #**1000783829** associated with the debt.
2. 1099C Form (please complete box 2, 3, 4, 5, 6, and 7) and keep copy C for your records.

**I, Lewis: Sahar-Amanda, am also accepting all rights, issues, titles, profits and beneficial interest owed to the principal, including the promissory note and Deed of Trust.**

**I, Lewis: Sahar-Amanda, the agent for the principal SAHAR LEWIS am officially instructing PNC Bank Indentured Trustee to discharge the debt for account #1000783829.**

Stefanie Armijo or whomever is currently in position as PNC Bank Indentured Trustee is hereby instructed to use the principal's (SAHAR LEWIS) promissory note to discharge the debt

2/27/2025

associated with the principal's account #**1000783829** using the 1099-C form. Once this is completed, you are instructed to wire the promissory note through Sahar Lewis's TREASURYDIRECT L-516-860-257 Routing Number 051736158) and send a confirmation that it has been completed.

Thank you for your time and attention to this matter.

**Notice to agent is notice to principal. Notice to principal is notice to agent.**

Sincerely, without ill will, without prejudice, and in good faith

By: *Sahar Amanda Lewis*

By: Sahar-Amanda:Lewis

ALL RIGHTS RESERVED WITHOUT PREJUDICE, WITHOUT RECOURSE i.e. all Natural Inalienable Rights Reserved

*Please address all future correspondence in the matter to, namely  Sahar-Amanda;Lewis beneficiary, as commonly called. Please Note: I wish to deal with this matter in writing and I do not give your organization permission to contact me by telephone.*

8585 ☐ VOID ☐ CORRECTED

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Date of identifiable event DECEMBER 7 2024 | OMB No. 1545-1424 | Cancellation of Debt |
|---|---|---|---|
| PNC Bank The Tower at PNC Plaza, 300 Fifth Ave Pittsburgh, Pennsylvania 15222 | 2 Amount of debt discharged $ | Form 1099-C (Rev. January 2022) | |
| | 3 Interest, if included in box 2 $ | For calendar year 20 | |

| CREDITOR'S TIN 25-1435979 | DEBTOR'S TIN 6126 | 4 Debt description PNC Bank Account # 1000783829 Mortgage for Parcel # 178-06-711-024 | Copy A For Internal Revenue Service Center |
|---|---|---|---|
| DEBTOR'S name SAHAR LEWIS | | | File with Form 1096. |
| Street address (including apt. no.) 3139 Belvedere Dr | | 5 Check here if the debtor was personally liable for repayment of the debt ☐ | For Privacy Act and Paperwork Reduction Act Notice, see the current General Instructions for Certain Information Returns. |
| City or town, state or province, country, and ZIP or foreign postal code Henderson NV 89014 | | | |
| Account number (see instructions) 1000783829 | | 6 Identifiable event code | 7 Fair market value of property $ |

Form 1099-C (Rev. 1-2022)   Cat. No. 26280W   www.irs.gov/Form1099C   Department of the Treasury - Internal Revenue Service

Do Not Cut or Separate Forms on This Page — Do Not Cut or Separate Forms on This Page

---

8585 ☐ VOID ☐ CORRECTED

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Date of identifiable event | OMB No. 1545-1424 | Cancellation of Debt |
|---|---|---|---|
| | 2 Amount of debt discharged $ | Form 1099-C (Rev. January 2022) | |
| | 3 Interest, if included in box 2 $ | For calendar year 20 | |

| CREDITOR'S TIN | DEBTOR'S TIN | 4 Debt description | Copy A For Internal Revenue Service Center |
|---|---|---|---|
| DEBTOR'S name | | | File with Form 1096. |
| Street address (including apt. no.) | | 5 Check here if the debtor was personally liable for repayment of the debt ☐ | For Privacy Act and Paperwork Reduction Act Notice, see the current General Instructions for Certain Information Returns. |
| City or town, state or province, country, and ZIP or foreign postal code | | | |
| Account number (see instructions) | | 6 Identifiable event code | 7 Fair market value of property $ |

Form 1099-C (Rev. 1-2022)   Cat. No. 26280W   www.irs.gov/Form1099C   Department of the Treasury - Internal Revenue Service

Do Not Cut or Separate Forms on This Page — Do Not Cut or Separate Forms on This Page

---

8585 ☐ VOID ☐ CORRECTED

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Date of identifiable event | OMB No. 1545-1424 | Cancellation of Debt |
|---|---|---|---|
| | 2 Amount of debt discharged $ | Form 1099-C (Rev. January 2022) | |
| | 3 Interest, if included in box 2 $ | For calendar year 20 | |

| CREDITOR'S TIN | DEBTOR'S TIN | 4 Debt description | Copy A For Internal Revenue Service Center |
|---|---|---|---|
| DEBTOR'S name | | | File with Form 1096. |
| Street address (including apt. no.) | | 5 Check here if the debtor was personally liable for repayment of the debt ☐ | For Privacy Act and Paperwork Reduction Act Notice, see the current General Instructions for Certain Information Returns. |
| City or town, state or province, country, and ZIP or foreign postal code | | | |
| Account number (see instructions) | | 6 Identifiable event code | 7 Fair market value of property $ |

Form 1099-C (Rev. 1-2022)   Cat. No. 26280W   www.irs.gov/Form1099C   Department of the Treasury - Internal Revenue Service

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, DC 20549

**FORM 10-K**

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2023

or

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from to
Commission file number 001-09718

# THE PNC FINANCIAL SERVICES GROUP, INC.
(Exact name of registrant as specified in its charter)

| Pennsylvania | 25-1435979 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**The Tower at PNC Plaza, 300 Fifth Avenue, Pittsburgh, Pennsylvania 15222-2401**
(Address of principal executive offices, including zip code)

Registrant's telephone number, including area code - (888) 762-2265

Securities registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Trading Symbol(s) | Name of Each Exchange on Which Registered |
|---|---|---|
| Common Stock, par value $5.00 | PNC | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act:

$1.80 Cumulative Convertible Preferred Stock – Series B, par value $1.00

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☒

If securities are registered pursuant to Section 12(b) of the Act, indicate by check mark whether the financial statements of the registrant included in the filing reflect the correction of an error to previously issued financial statements. ☐

To Company:

Matrix Trust Company

Attn: Vice President

P.O. Box 52129 Phoenix, AZ 85072-2129

The PNC Financial Services Group, Inc.
Attention: Executive Services Department
One PNC Plaza
249 Fifth Avenue, 21st Floor Mailstop: P1-POPP-21-B Pittsburgh, PA 15222
Fax: 412-762-9152

For purposes of this Trust, Change in Control shall mean:

(1)    Any Person becomes the beneficial owner (within the meaning of Rule 13d-3 promulgated under the Securities Exchange Act of 1934) of 20% or more of either (x) the then-outstanding shares of common stock (the "**Outstanding PNC Common Stock**") or (y) the combined voting power of the then- outstanding voting securities of PNC entitled to vote generally in the election of directors (the "**Outstanding PNC Voting Securities**"). The following acquisitions will not constitute a Change in Control for purposes of this definition, (1) any acquisition directly from PNC, (2) any acquisition by PNC, (3) any acquisition by any employee benefit plan (or related trust) sponsored or maintained by PNC or any company controlled by, controlling or under common control with PNC (an "**Affiliated Company**"), (4) any acquisition pursuant to an Excluded Combination (as defined below) or (5) an acquisition of beneficial ownership representing between 20% and 40% inclusive, of the Outstanding PNC Voting Securities or Outstanding PNC Common Stock if the Incumbent Board (as defined below) as of immediately prior to any such acquisition approves such acquisition either prior to or immediately after its occurrence;

(2)    Individuals who, as of the date hereof, constitute the Board (the "**Incumbent Board**") cease for any reason to constitute at least a majority of the Board (excluding any Board seat that is vacant or otherwise unoccupied). For purposes of this definition, any individual becoming a director subsequent to the date hereof whose election, or nomination for election by the shareholders of PNC, was approved by a vote of at least two-thirds of the directors then comprising the Incumbent Board will be considered as though such individual was a member of the Incumbent Board, but excluding for this purpose, any such individual whose initial assumption of office occurs as a result of an actual or threatened election contest with respect to the election or removal of directors or other actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board;

(3)    Consummation of a reorganization, merger, statutory share exchange or consolidation or similar transaction involving PNC or any of its subsidiaries, a sale or other disposition of all or substantially all of the assets of PNC, or the acquisition of assets or stock of another entity by PNC or any of its subsidiaries (each, a "**Business Combination**"). A transaction otherwise meeting the definition of Business Combination will not be treated as a Change in Control if following completion of the transaction all or substantially all of the beneficial owners of the Outstanding PNC Common Stock and the Outstanding PNC Voting Securities immediately prior to such Business Combination beneficially own, directly or indirectly, more than 60% of the then-outstanding shares of common stock (or, for a non-corporate entity, equivalent securities) and the combined voting power of the then-outstanding voting securities entitled to vote generally in the election of directors (or, for a non-corporate entity, equivalent governing body), as the case may be, of the entity resulting from such Business Combination (including, without limitation, an entity that, as a result of such transaction owns PNC or all or substantially all of PNC's assets either directly or through one or more subsidiaries) in substantially the

IN WITNESS WHEREOF, the Company and Trustee have executed this Agreement, as of the date first written above.

Agreed To By:

TRUSTEE:
MATRIX TRUST COMPANY

BY: /s/ Stefanie Armijo

NAME: Stefanie Armijo

TITLE: Vice President

COMPANY:
The PNC Financial Services Group, Inc.

BY: /s/ Peggy Chevako

NAME: Peggy Chevako

TITLE: Senior Vice President, Director of Benefits Planning and Administration

# USPS Tracking®

FAQs >

**Track Packages
Anytime, Anywhere**

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?app=UspsTools&ref=ho nepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

**Tracking Number:**

**Remove ✕**

## RF603899505US

Copy    **Add to Informed Delivery (https://informeddelivery.usps.com/)**

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 10:17 am on March 6, 2025 in DENVER, CO 80202.

**Delivered**
Delivered, Front Desk/Reception/Mail Room

DENVER, CO 80202
March 6, 2025, 10:17 am

**See All Tracking History**

What Do USPS Tracking Statuses
Mean?
**(https://faq.usps.com/s/article/Where-is-my-package)**

---

| Registered No. | | Date Stamp |
|---|---|---|
| RF603899505US | | 0248  55 |

| To Be Completed By Post Office | Postage $ | $1.77 | Extra Services & Fees (continued) | |
|---|---|---|---|---|
| | Extra Services & Fees | | ☐ Signature Confirmation $ | |
| | ☐ Registered Mail $ | $7.30 | ☐ Signature Confirmation Restricted Delivery $ | |
| | ☐ Return Receipt (hardcopy) $ | $0.00 | | |
| | ☐ Return Receipt (electronic) $ | $0.00 | Total Postage & Fees | |
| | ☐ Restricted Delivery $ | $0.00 | $ $21.07 | |
| | Customer Must Declare Full Value $ $1.00 | Received by 03/03/2025 | Domestic Insurance up to $50,000 is included based upon the declared value. International Indemnity is limited. (See Reverse). | |

OFFICIAL USE

| To Be Completed By Customer (Please Print) All Entries Must Be In Ballpoint or Typed | FROM | S Lewis   HENDERSON, NV 89014  3139 Belvedere Dr  Henderson Nevada [89614] |
|---|---|---|
| | TO | PNC Trustee  VP Stefanie Armijo  Matrix Trust Company 717 17th St 1200  Denver Colorado [80202] |

PS Form **3806,** Registered Mail Receipt
April 2015, PSN 7530-02-000-9051

Copy 1 - Customer
(See Information on Reverse)