**Sahar Lewis Pluyd Coleman CFRLT, et al.,**
Plaintiffs,

v.

**PNC Bank, N.A.,**
Defendant.



```
_FILED          ____RECEIVED
___ENTERED      ____SERVED ON
         COUNSEL/PARTIES OF RECORD

        JUN 0 4 2025

   CLERK US DISTRICT COURT
     DISTRICT OF NEVADA
BY:_____AMMI_____DEPUTY
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Case No. 2:25-cv-00791-ART-DJA

## MOTION FOR SUMMARY JUDGMENT

BASED ON FRAUD UPON THE COURT BY PNC'S ATTORNEY BLAKE

**Plaintiffs**, proceeding in propria persona, hereby move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the grounds that Defendant PNC Bank, N.A., through its attorney Blake, engaged in fraud upon the court that fatally undermines Defendant's standing and the validity of the foreclosure sale.

## INTRODUCTION

1. This case involves an unlawful foreclosure initiated and conducted by PNC Bank, N.A., through its legal counsel, Blake, who acted as the primary agent in prosecuting the foreclosure.

2. Plaintiffs have demonstrated through evidence—including a forensic audit, registered security packets, and correspondence—that the underlying debt was tendered for discharge, and that PNC does not possess the original promissory note.

3. Blake, as PNC's attorney, knowingly misrepresented material facts to the court, including ownership and standing, and concealed critical evidence, thereby perpetrating a fraud upon the court.

4. This fraudulent conduct by Blake directly resulted in an unlawful foreclosure sale lacking lawful authority.

## STATEMENT OF FACTS

- Plaintiffs tendered a negotiable instrument to discharge the alleged debt, pursuant to UCC § 3-603, which PNC and Blake refused to acknowledge or return.

- The forensic audit **See Exhibit A, Forensic Audit Report, dated 5/30/2025** confirms PNC's failure to produce the original promissory note or prove chain of title.

- Despite these facts, Blake filed motions and pleadings asserting standing and authority to foreclose, concealing material information.

- Blake refused to meet and confer regarding discovery, obstructing Plaintiffs' efforts to obtain evidence.

- These actions constitute intentional misrepresentations and omissions amounting to fraud upon the court.

## Statement of Undisputed Material Facts – Procedural Timeline

1. **April 10, 2025** – Plaintiffs filed their original complaint in Nevada state court, asserting claims against PNC Bank including lack of standing, RESPA violations, securities fraud, and seeking injunctive relief to stop a nonjudicial foreclosure.

2. **April–May 2025** – Plaintiffs, appearing *in propria persona*, experienced delays in obtaining the court-issued summons. The clerk did not release the summons for service until **May 4, 2025**, impairing timely service.

3. **May 6, 2025** – PNC's counsel, David Blake, filed a Notice of Removal to federal court (Case No. 2:25-cv-00791-ART-DJA), just **two days before** the scheduled **May 8, 2025** emergency hearing in state court, thereby preventing the hearing from proceeding.

4. **May 8, 2025** – Plaintiffs' emergency request for a temporary restraining order (TRO) in state court was cancelled due to removal. No federal hearing occurred in its place before the foreclosure.

5. **May 9, 2025** – The foreclosure sale of Plaintiffs' home was conducted by Clear Recon Corp on behalf of PNC, while this litigation was still pending and without judicial review of the pending claims or emergency motions.

6. **May 13, 2025** – Plaintiffs filed a motion in federal court to void the sale and for injunctive relief.

7. **May 15, 2025** – A federal hearing was scheduled on Plaintiffs' motion to void the sale. However, PNC's counsel filed a motion claiming the trust must be represented by an attorney, and the hearing was **vacated** without resolving the emergency relief request.

8. **May 22, 2025** – Plaintiffs emailed opposing counsel requesting a Rule 26(f) meet-and-confer and follow-up on discovery issues, including standing, chain of title, and the original note. PNC's counsel did not respond.

9. **June 2, 2025** – The Court held the first substantive hearing in this case. However, the hearing was **postponed due to technical issues.**.

## ARGUMENT

### I. Fraud Upon the Court Warrants Summary Judgment

Fraud upon the court undermines judicial integrity and justifies setting aside judgments and granting summary judgment to the aggrieved party. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

### II. Blake's Conduct Deprives PNC of Standing and Voids the Foreclosure

Blake, as PNC's legal representative, misled the court regarding ownership and failed to disclose the absence of the original note, invalidating PNC's standing.

### III. The Foreclosure Sale Is Void Ab Initio

Because the foreclosure was executed based on fraudulent misrepresentations, it must be voided.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

- Grant summary judgment in favor of Plaintiffs;

- Void the foreclosure sale of May 9, 2025;

- Consider appropriate sanctions against Blake for fraud upon the court; and

- Grant any further relief as the Court deems just and proper.

**Respectfully submitted,**   By: [signature] ucc 1-308
By: Sahar-Amanda: Lewy ucc 1-308

**Sahar Lewis Pluyd Coleman Trustees**
Plaintiffs, In Propria Persona
Date: June 2, 2025

# Forensic Loan Analysis Report

## Sahar Lewis

3139 Belvedere Dr., Henderson NV 89014

## Table of Contents

| Section Title | Page |
|---|---|
| Forensic Audit | 3 |
| Anti-Predatory Lending Violations | 4 |
| Forensic Examination | 6 |
| Forensic Examination Findings | 7 |
| Missing Documents | 8 |
| Mortgage Void/Cancellation | 9 |
| Law Summary | 11 |

## Forensic Audit focuses on Violations of

## (TILA) Truth In Lending,(RESPA) Real Estate Procedures Acts, and (FDCPA) Fair Debt Collection Practices Act.

1. A Forensic Loan Audit is an audit on loan documentation to uncover violations and errors. It is an extensive comprehensive review and investigation into the Homeowners/borrowers existing loan.

**The main types of violations are as follows;**

- ❖ Good Faith Guideline Violations.
- ❖ Borrower approved for loan they are not able to repay.
- ❖ Real Estate Procedures Acts Violations
- ❖ No Net Benefit to Borrower.
- ❖ Truth-In-Lending Act (TILA) Violations Inaccurate reporting of APR and finance charge calculations on borrower disclosures. Calculation errors which occur as a direct result of failing to include one or more prepaid finance charges in the calculations, incorrect disclosed funding dates, or last-minute changes made to loan by the settlement agent at the closing table. If it is understated, the lender is in violation of the federal Truth-In-Lending Act as well as many state laws prohibiting such actions. Lender is required to reimburse borrower for the difference, and may be subject to statutory damages, administrative sanctions, loan buy-backs, and lawsuits. In addition, the rescission period may reopen, creating additional risk for the lender.

# Anti-Predatory Lending Violations

### These are relating to Consumer Protection laws;

- ❖ Violations usually occur because of the misunderstanding of how they work. Examples of violations include failing to include fees such as yield spread premiums in the calculations or using an incorrect loan amount value to perform the calculation. Penalties vary by each law. The usual costs include borrower reimbursements, statutory and punitive damages, attorneys' fees, administrative fines and penalties, loan buy-backs and reformation, and class-action lawsuits.

### State Law Violations;

- ❖ Examples include illegal prepayment penalty clauses, rates that are usurious, or fees that are not allowed to be charged. Some penalties include actual damages and costs, attorney's fees, administrative fines and penalties, loan buy-backs, and class-action lawsuits.

- ❖ Reverse Mortgage Violations -These violations include violations relating to reverse mortgage obtained. Some violations include failing to disclose the APR, and providing incomplete or improper disclosures.

- ❖ Real Estate Settlement Procedures Act (RESPA) Violations-RESPA prohibitions put limits on a lender's and broker's ability to charge or pay fees that are hidden from the borrower. Violations include accepting kickbacks or referral fees, up charging for services provided by 3rd parties, and charging for services not performed.

- ❖ Penalties include actual damages, administrative fines and class-action lawsuits.

- ❖ In addition, other violations include lending without providing borrowers a reasonable, tangible net benefit, state-specific disclosure errors, servicing violations, and Fair Lending violations.

    If there is one of these types of violations in the loan audit discovered, it could result in some cases repayment of interest back to the borrower/homeowner.

## Constructive Fraud

- ❖ Material facts relating to the loan, which include terms of the loan. Prepayment penalty or any information which a borrower must know before loan is accepted. Were these facts not properly disclosed to the borrower? Were they mentioned at all?

### Fraud and Negligent Misrepresentation

❖ This is basically any statements comments and representation written or oral by the broker, loan officer, notary which in any way contradicted the terms of the loan documents.

### Negligent Misrepresentation

❖ If the broker/loan officers who worked on the loan make errors which result in misrepresentation, this is classified as negligent misrepresentation.

### Breach of Contract

❖ Any terms in the contract of the note the lender failed to follow, such as the way the interest is calculated and the penalties.

## Forensic Examination

2. This loan application has been audited for the purpose of determining violations of Truth in Lending Act [16 U.S.C. § 1601] ("TILA"), Home Ownership Equity Protection Act [12 C.F.R. 226.32 et seq.] ("HOEPA"), Real Estate Settlement Procedures Act [12 U.S.C. § 2601], and to the extent applicable, violations of other state and federal laws, certain predatory lending practices, and compliance issues.

3. As is standard practice for the process of forensic auditing, this report is based solely on the documentation provided by the borrower requesting my services. The borrower understands that I am required to make reasonable and industry knowledgeable assumptions as to provide disclosures, loan terms, and compliance dates that, if erroneous, may result in differences between my findings and the documents' actual compliance with regulatory requirements.

4. Specific analytical tests were used to determine compliance with various federal regulations including the Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Home Ownership and Equity Protection Act (HOEPA) and Regulation Z. These tests included: a) the reverse engineering and calculation of all required TILA disclosure variables; b) a detailed analysis and review of all loan variables and features; c) an assessment of HOEPA and other disclosure requirements; d) analysis and correct computation of the rescission period; and e) a detailed examination of HUD-1 closing costs. A TILA payment schedule was also prepared with a detailed list of loan terms for informational purposes. For all sections, "NA" indicates that the value, variable or result is not applicable or not available.

# Single Family Home

**Type of Report:** Forensic Mortgage Analysis

**Prepared for:** Sahar Lewis
**Loan Amount:** $ 270,000
**Loan Date:** December 7, 2021

## Forensic Examination Findings

### Good Faith Estimate and Truth in Lending Statement

5. The Truth In Lending Act states that an initial disclosure is to be issued within three (3) working or business days from the receipt of the loan application. In addition, inclusions, exclusions, and applicable changes to the terms of loan or program must be provided within three (3) working or business days.

6. The Real Estate Settlement Practices Act (RESPA) of 1974 is a response by Congress to perceived abuses in the real estate settlement process. It is an attempt to protect consumer(s) from unnecessarily high settlement charges resulting from certain abuses.

7. RESPA's stated purpose is to bring about specific changes in the agreed or proposed settlement process for residential real estate. Results of this act are as follows:

❖ More accurate and effective advance disclosure of settlement costs to home buyers and to home sellers removal of or elimination of kickbacks and/or referral fees that had a tendency to unnecessarily increase certain settlement service costs.
❖ Reduced Amounts to home buyers to be placed in escrow accounts established to ensure the payment of real estate taxes and insurance fees.
❖ Significant reformation and modernization of local land title record keeping (12 U.S.C.A § 2601)

8. The Real Estate Settlement Practices Act of 1974 is in governance and applies to any "federally related mortgage loan" (excluding loans for temporary financing such as a construction loan that is secured by a first or subordinate lien on residential property, including individual units of condominiums and cooperatives) 12 U.S.C.A. § 2602(1) (A). It also applies to any whole or partial loans by any lender with deposits or accounts that are insured by a federal agency and/or a lender that is regulated by the federal government 12 U.S.C.A. § 2602(1) (B) (i).

## Missing Documents

**File is missing initial and final disclosure documents, including but not limited to:**

**Per RESPA (Real Estate Settlement Procedures Act- 12 USC 2601 et seq.)**

- ❖ Affiliated Business Arrangement Disclosure
- ❖ Servicing Disclosure Statement
- ❖ Escrow Account Disclosure

**Per ECOA (Equal Credit Opportunity Act- Reg B - 12 CFR 202):**

- ❖ Initial signed & dated Uniform Residential Loan Application (1003)

**Per FCRA (Fair Credit Reporting Act- 15 USC 1681):**

- ❖ Disclosure of Credit Scores
- ❖ Notice to Home Loan Applicant

9. As per both state and federal laws that are mandated for initial disclosures, we noted below that initial disclosure documentation was not found nor provided nor included in this file.

10. If the broker failed to deliver that initial disclosure to the borrower, and then it becomes incumbent for the lender to ensure and confirm that these disclosures were delivered to the borrower on time. If the lender failed to provide these disclosure documents to the borrower within three (3) working or business days for the original date of loan application, then the borrower must complete a sworn statement testifying to that effect.

## Right of Recession/Right to Rescind Mortgage

***Notice Of Right To Cancel* TILA (*Truth In Lending Act, 15 USC Section 1601 et seq; 12 CFR Part 266*)** allows three (3) days to review Disclosure Documents. The referenced "Three Day Right To Cancel" must have a trigger to begin. That trigger is, when the Lender has provided the Borrower with **ALL** of the required Disclosures under ***TILA***, and that the same are true, complete, accurate, and timely provided.

Being as the entire loan/mortgage process and Mortgage Note referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment and fraudulent misrepresentation, the Borrower has other recourse, right, and cause of action under numerous State and Federal statutes.

<span style="color:red">Pursuant to the United State Supreme Court's decision in <u>Jesinoski v. Countrywide Home Loans, Inc.</u> (2015), 135 S.Ct. 790, TILA gives me, as a borrower, the right to rescind the subject loan until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under TILA. I am hereby notifying you, as the creditor, of my intention to do so as you and/or your predecessors have failed to satisfy the TILA disclosure requirements, including but not limited to delivery of a written document to me explaining my rights at the time of the transaction.</span>

To this date, Lender has **never** provided Borrower with true, complete, accurate or timely documents as required. **ONLY AFTER** such provision has been complied with can the "**3 DAY RIGHT TO CANCEL**" period begin. If the required full Disclosures have not been provided, then the period in which to CANCEL is extended for up to three (3) years, or until Lender moves to foreclose. The records thus far evidence that Borrower has requested to cancel within the three (3) year stipulated time period, while still waiting to receive all truth-in-lending disclosures as required by Federal Law, the same of which has never been received.

A close perusal, and audit of Borrower's note/loan documents have revealed certain Disclosure Violations, and that the Borrower has the remedial right and remedy pursuant to ***UCC 1-201 (32) (34)***, inter alia, to invoke their Right Of Rescission (ROR), as further evidenced by the original **NOTICE OF RIGHT TO CANCEL**. This letter shall constitute **NOTICE** to all Lender(s), Successor(s), and Beneficiaries assigned, and/or appointed.

After sufficient **NOTICE** has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s), and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to the Borrower, as well as any money/funds given to any person or fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until Lender complies, Borrower may retain the proceeds of the transaction. If it should be "impractical", or "Unfair" for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered, then he/she/they may offer its "Reasonable Value".

In the event that the Lender should fail, or refuse to return the Borrower's money offer within twenty (20) days, the Borrower may then regain/acquire all rights to clear title and reconveyance under **Federal law**, **State Statutes**, **Uniform Commercial Code**, and provisions of **TILA**, with the same being supported by the evidence of both public and bank records, and further as attached hereto.

Additionally, Borrower has the right to offer Lender a Reasonable Value. However, the penalties a bank can face for violations of **TILA**, and other State and Federal law can be as much as triple the damages, i.e., triple the amount of the interest the bank stood to fraudulently make off the mortgage/loan transaction. Therefore, the Borrower(s) hereby in good faith makes the following offer: Borrower will forgive Bank/Lender any liability incurred by its wrongful actions, provided Bank/Lender rightfully forgive Borrower(s) the full amount of mortgage/credit the Bank/Lender fraudulently alleged to have given. In addition, Borrower(s) make the one time demand $1, 250,000.00 for any loss, damage, and injury he/she/they have sustained; and that Bank/Lender also immediately remove any/all negative comments on Borrower's credit report attributed to this transaction.

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt, shall constitute this **NOTICE OF RIGHT TO CANCEL** as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein.

**Law Summary and Additional Information Section**
**Real Estate Settlement Procedure Act Law(Respa).**

§ 3500.6  Special information booklet at time of loan application.

(a) *Lender to provide special information booklet.* Subject to the exceptions set forth in this paragraph, the lender shall provide a copy of the special information booklet to a person from whom the lender receives, or for whom the lender prepares, a written application for a federally related mortgage loan. When two or more persons apply together for a loan, the lender is in compliance if the lender provides a copy of the booklet to one of the persons applying.

(1) The lender shall provide the special information booklet by delivering it or placing it in the mail to the applicant not later than three business days (as that term is defined in §3500.2) after the application is received or prepared. However, if the lender denies the borrower's application for credit before the end of the three-business-day period, then the lender need not provide the booklet to the borrower. If a borrower uses a mortgage broker, the mortgage broker shall distribute the special information booklet and the lender need not do so. The intent of this provision is that the applicant receive the special information booklet at the earliest possible date.

(2) In the case of a federally related mortgage loan involving an open-ended credit plan, as defined in §226.2(a)(20) of Regulation Z (12 CFR), a lender or mortgage broker that provides the borrower with a copy of the brochure entitled "When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit", or any successor brochure issued by the Board of Governors of the Federal Reserve System, is deemed to be in compliance with this section.

(3) In the categories of transactions set forth at the end of this paragraph, the lender or mortgage broker does not have to provide the booklet to the borrower. Under the authority of section 19(a) of RESPA (12 U.S.C. 2617(a)), the Secretary may issue a revised or separate special information booklet that deals with these transactions, or the Secretary may chose to endorse the forms or booklets of other Federal agencies. In such an event, the requirements for delivery by lenders and the availability of the booklet or alternate materials for these transactions will be set forth in a Notice in the Federal Register. This paragraph shall apply to the following transactions:

(i) Refinancing transactions;

(ii) Closed-end loans, as defined in 12 CFR 226.2(a)(10) of Regulation Z, when the lender takes a subordinate lien;

(iii) Reverse mortgages; and

(iv) Any other federally related mortgage loan whose purpose is not the purchase of a 1- to 4-family residential property.

(b) *Revision.* The Secretary may from time to time revise the special information booklet by publishing a notice in the Federal Register.

(c) *Reproduction.* The special information booklet may be reproduced in any form, provided that no change is made other than as provided under paragraph (d) of this section. The special information booklet may not be made a part of a larger document for purposes of distribution under RESPA and this

section. Any color, size and quality of paper, type of print, and method of reproduction may be used so long as the booklet is clearly legible.

(d) *Permissible changes.* (1) No changes to, deletions from, or additions to the special information booklet currently prescribed by the Secretary shall be made other than those specified in this paragraph (d) or any others approved in writing by the Secretary. A request to the Secretary for approval of any changes shall be submitted in writing to the address indicated in §3500.3, stating the reasons why the applicant believes such changes, deletions or additions are necessary.

(2) The cover of the booklet may be in any form and may contain any drawings, pictures or artwork, provided that the words "settlement costs" are used in the title. Names, addresses and telephone numbers of the lender or others and similar information may appear on the cover, but no discussion of the matters covered in the booklet shall appear on the cover.

(3) The special information booklet may be translated into languages other than English.

Truth In Lending (TILA)
Regulation Z

Regulation Z (12 CFR 226) implements the Truth in Lending Act (TILA) (15 USC 1601 et seq.), which was enacted in 1968 as title I of the Consumer Credit Protection Act (Pub. L. 90-321). Since its implementation, the regulation has been amended many times to incorporate changes to the TILA or to address changes in the consumer credit marketplace.

During the 1980s, Regulation Z was changed significantly, first in connection with the Truth in Lending Simplification and Reform Act of 1980. In 1981, all consumer leasing provisions in the regulation were transferred to the Board's Regulation M. During the late 1980s, Regulation Z was amended to implement the rate limitations for home-secured loans set forth in section 1204 of the Competitive Equality Banking Act of 1987 and to require disclosures for adjustable-rate mortgage loans. Other Regulation Z amendments implemented the Fair Credit and Charge Card Disclosure Act of 1988 and the Home Equity Loan Consumer Protection Act of 1988, which required disclosure of key terms at the time of application.

Purpose of the TILA and Regulation Z

The Truth in Lending Act is intended to ensure that credit terms are disclosed in a meaningful way so that consumers can compare credit terms more readily and more knowledgeably. Before its enactment, consumers were faced with a vast array of credit terms and rates. It was difficult to compare loans because the terms and rates were seldom presented in the same format. Now, all creditors must use the same credit terminology and expressions of rates. In addition to providing a uniform system for disclosures, the act is designed to

- Protect consumers from inaccurate and unfair credit billing and credit card practices
- Provide consumers with rescission rights
- Provide for rate caps on certain dwelling-secured loans
- Impose limitations on home equity lines of credit and certain closed-end home mortgages

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

**Coleman Family Trust, et al.,**
*Plaintiffs,*
v.
**PNC Bank, N.A.,**
*Defendant.*

Case No. **2:25-cv-00791-ART-DJA**

---

# [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Having reviewed Plaintiffs' Motion for Summary Judgment, the accompanying evidence and exhibits, and good cause appearing,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED**.

The Court finds that:

1. Defendant PNC Bank, N.A., through its counsel, engaged in conduct amounting to fraud upon the Court;

2. Defendant has failed to establish standing to enforce the alleged debt or to initiate foreclosure proceedings;

3. The foreclosure sale conducted on May 9, 2025, is void ab initio;

4. Plaintiffs have presented unrebutted evidence, including a forensic audit and documented correspondence, demonstrating that the underlying debt was discharged or otherwise uncollectible at law;

5. Defendant's counsel obstructed discovery, misrepresented material facts to the Court, and prevented judicial review of Plaintiffs' emergency filings, resulting in denial of due process.

**THEREFORE, IT IS FURTHER ORDERED THAT:**

- The foreclosure sale of the subject property conducted on **May 9, 2025** is **hereby declared void**;

- Title and possession of the subject property shall be **restored to Plaintiffs**;

- Appropriate **sanctions may be imposed** against Defendant's counsel for perpetrating fraud upon the Court, subject to further briefing if necessary;

- The Clerk shall enter judgment in favor of Plaintiffs accordingly;

- Any additional relief requested by Plaintiffs not expressly granted herein is **denied without prejudice**.

IT IS SO ORDERED.

Dated: _____, 2025

_____

Hon.**Judge Anne R. Traum**
United States District Judge

**Sahar Lewis Pluyd Coleman CFRLT, et al.,**
Plaintiffs,

v.

**PNC Bank, N.A.,**
Defendant.

# UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Case No. 2:25-cv-00791-ART-DJA

## SUPPLEMENTAL DECLARATION OF SAHAR LEWIS

IN SUPPORT OF MOTION TO VOID FORECLOSURE SALE AND FOR SANCTIONS AGAINST PNC BANK, N.A.

I, Sahar Lewis, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. "I am a Plaintiff in the above-captioned matter, proceeding in my individual capacity. I am also the duly appointed trustee of the Coleman Family Revocable Trust, which holds legal interest in the property at issue. I have personal knowledge of the facts stated herein."

2. On May 9, 2025, a foreclosure sale occurred on the property subject to this litigation. Plaintiffs contend the foreclosure sale was unlawful and void ab initio because Defendant PNC Bank, N.A. lacks standing to enforce the note or mortgage.

3. Plaintiffs have repeatedly requested production of the original promissory note, chain of title, and related servicing documents from Defendant, including by filing a Motion to Compel (ECF No. 18). This motion was denied without prejudice on May 15, 2025.

4. In compliance with Federal Rule of Civil Procedure 26(f), 37(a)(1), and Local Rule 26-6(c), Plaintiffs sent a written request to Defendant's counsel on May 22, 2025, seeking to initiate a good-faith meet-and-confer conference to discuss outstanding discovery issues related to note production, chain of title, and accounting records. A true

and correct copy of this email is attached hereto as **Exhibit A**.

5. Defendant's counsel failed to respond or propose alternative dates for the Rule 26(f) conference, despite Plaintiffs' reasonable availability.

6. Plaintiffs previously filed a registered security packet and *private administrative process packet* demonstrating that Defendant lacks possession of the original note and that the debt was tendered for discharge by way of a negotiable instrument pursuant to UCC § 3-603.

7. Matrix Trust Bank and Stefanie Armijo, who were previously named as Defendants but later voluntarily dismissed to streamline the litigation, are the indentured trustee and custodian for PNC's securitized trust.

8. Despite their dismissal, counsel for Matrix Trust Bank improperly appeared at a federal hearing in this matter, raising arguments without standing or authority. Stefanie Armijo has made no contact or appearance in this case. The unauthorized participation of Matrix Trust Bank's counsel raises due process concerns and suggests collusion with Defendant's counsel to perpetuate foreclosure on discharged debt.

9. Defendant has ignored Plaintiffs' lawful attempts to discharge the debt and failed to respond adequately to Qualified Written Requests under RESPA.

10. Based on the foregoing facts, Defendant lacks standing, the foreclosure sale must be voided, and sanctions are warranted for Defendant's refusal to meet and confer and for improper litigation conduct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 2nd day of June, 2025.

By: *[signature]* — Amanda Lewis  UCC 1-308
**Sahar Lewis**
Plaintiff, In Propria Persona

## EXHIBIT A

**Email from Plaintiffs to Defendant's counsel dated May 22, 2025, requesting Rule 26(f) conference.**



EX A

## NOTICE OF PENDING FEDERAL ACTION, EMERGENCY TRO, AND BAR TO SALE
1 message

---

**Coleman Family Trust** <thecolemanfamilytrust@gmail.com>　　　　　　　　　　　　　　Thu, May 22, 2025 at 20:11
To: David T. Blake <dtblake@ww.law>

**Subject:** Request to Meet and Confer re: Discovery – Coleman v. PNC Bank (2:25-cv-00791-ART-DJA)

**Dear Dave,**

Pursuant to Federal Rules of Civil Procedure 26(f) and 37(a)(1), and District of Nevada Local Rule 26-6(c), we are reaching out to initiate a good faith meet-and-confer discussion regarding our pending and anticipated discovery requests in *Coleman et al. v. PNC Bank, N.A.*, Case No. 2:25-cv-00791-ART-DJA.

We are specifically seeking to resolve the outstanding issues related to:

- Our previous motion to compel (ECF No. 18), which the Court denied without prejudice on May 15, 2025;
- Requests for chain of title, standing, accounting records, and related documents critical to our claims.

Please provide your availability for a Rule 26(f) conference and meet-and-confer session within the next 7 days. We are available on Mon.-Wed between 10am-3pm and Fri 12-3pm, and we are open to coordinating via phone, video, or written exchange.

We hope to resolve these matters cooperatively and avoid unnecessary court intervention. Please confirm your availability or propose alternative times.

Respectfully,
Pluyd Coleman
Sahar Lewis
*In Propria Persona*

[Quoted text hidden]
--
[Quoted text hidden]