UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PLUYD COLEMAN and SAHAR LEWIS, individually,<br><br>　　　　　Plaintiffs,<br>　　vs.<br>PNC BANK, N.A.,<br>　　　　　Defendant. | Case No. 2:25-CV-00791-ART-DJA<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS AND RELATED MOTIONS |

Plaintiffs Sahar Lewis and Pluyd Coleman bring this action against Defendant PNC Bank, challenging the foreclosure and nonjudicial foreclosure sale of property owned by the Coleman Family Revocable Living Trust ("Trust").[1] (ECF No. 27.) Plaintiffs first filed this action in the Eighth Judicial District Court, State of Nevada, and Defendant removed the case to federal court. (ECF No. 1.) Plaintiffs filed several motions for preliminary relief. (ECF Nos. 4, 5, 7, 10, 11, 12, 13, 14, 15.) The Court issued an order finding that the Trust could not proceed in this action represented by a non-lawyer and gave Plaintiffs thirty days to find legal counsel and enter an appearance. (ECF No. 19.) Plaintiffs filed an amended complaint in which they assert claims as individuals, and not on behalf of the Trust, as well as a renewed motion for a temporary restraining order. (ECF Nos. 27, 28.) The Court held a hearing on June 12, 2025, on Plaintiffs' emergency motions, and ordered that Plaintiffs' emergency motion was denied, as were their subsequent related motions. (ECF No. 45.)

Since then, Plaintiffs have filed a motion to compel initial disclosures (ECF No. 52), motion for verified demand in equity (ECF No. 60), and motion for

---

[1] This action was originally brought by Sahar Lewis and Pluyd Coleman as trustees on behalf of the Trust. (ECF No. 1-3.) In their first amended complaint, Plaintiffs now assert claims on behalf of themselves as individuals. (ECF No. 27.)

1

injunctive relief *ex parte* (ECF No. 65) that have all been denied.

Still outstanding are Plaintiffs' motion for clarification (ECF No. 50), motion to shorten time for hearing on injunctive relief (ECF No. 69), motion for temporary restraining order (ECF Nos. 70, 71), and motion to reconsider (ECF No. 75).

The Defendant filed its motion to dismiss on June 4, 2025. (ECF Nos. 36.) Plaintiffs responded. (ECF No. 41.) Defendant replied. (ECF No. 44). Being fully briefed, the Court grants the motion to dismiss and denies Plaintiffs' outstanding motions as moot.

## I.    Factual Background

Plaintiff Sahar Lewis acquired the subject property located at 3139 Belvedere Dr., Henderson, Nevada, in December 2021. (ECF No. 29-1.) That same month, Ms. Lewis acquired a home loan from North American Financial Corporation, secured with a deed of trust. (ECF No. 29-2.) In 2023, Ms. Lewis transferred the property via quitclaim deed to the Coleman Family Revocable Living Trust, of which she and her husband Pluyd Coleman are trustees. (ECF No. 29-5.) In June 2024, the deed of trust was assigned to PNC Bank. (ECF No. 29-3.) At oral argument, Ms. Lewis stated that she stopped making monthly mortgage payments sometime before April 2024. (ECF No. 45 at 4.) In November of 2024, a Notice of Breach and Default on the loan was sent to Ms. Lewis, which was recorded on December 2, 2024. (ECF No. 29-6.) Sometime around March 3, 2025, Ms. Lewis sent what she refers to as a "negotiable instrument" to PNC Bank, which Plaintiffs allege discharged their debt. (ECF No. 27 at 2.) Plaintiffs subsequently brought this lawsuit in state court, and the Defendants removed the case to this Court. (ECF No. 1.) On May 9, 2025, a nonjudicial foreclosure sale occurred and title was transferred on May 16, 2025. (ECF No. 27 at 2.)

Plaintiffs' amended complaint brings claims for breach of contract, securities fraud, wrongful foreclosure, and a claim to quiet title. (ECF No. 27.) The Court notes that Plaintiffs attempted to revise their First Amended Complaint

via a Motion for Clarification (ECF No. 50) and Affidavit re: First Amended Complaint (ECF No. 85), arguing new theories of lack of assignment, lack of standing, and securitization that were not pled or argued. The Court only considers those claims and arguments in Plaintiffs' First Amended Complaint and related filings. Fed R. Civ. P. 15; LR 7-2(g).

## II.     Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79. Although allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), sweeping conclusory allegations do not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

When considering a motion to dismiss, a court typically does not look beyond the complaint to avoid converting the motion to dismiss into a motion for summary judgment. *Khoja v. Orexigon Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir 2018). Notwithstanding, a court may take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2)

1   matters in the public record. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006).
2   A court may also take judicial notice of material pursuant to Federal Rule of
3   Evidence 201(b), which permits judicial notice of facts "not subject to reasonable
4   dispute because it: (1) is generally known within the trial court's territorial
5   jurisdiction; or (2) can be accurately and readily determined from sources whose
6   accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). A court "must
7   take judicial notice if a party requests it and the court is supplied with the
8   necessary information." Fed. R. Civ. P. Rule 201(c)(2).

9   If a motion to dismiss is granted, leave to amend should be given "freely"
10  "when justice so requires," and in the absence of a reason such as "repeated
11  failure to cure deficiencies by amendments previous allowed, undue prejudice to
12  the opposing party by virtue of allowance of the amendment, futility of the
13  amendment, etc." Fed. R. Civ. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962).
14  Generally, leave to amend is denied when it is clear that the deficiencies of the
15  complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.,*
16  957 F.2d 655, 658 (9th Cir. 1992).

17  **III.   Analysis**

18  Defendant argues that Plaintiffs lack standing to bring their claims and
19  failed to offer sufficient facts to state a claim. Plaintiffs argue that they lawfully
20  discharged the alleged debt "using valid commercial instruments." Critically, the
21  Court notes that Plaintiffs repeatedly used inaccurate or AI-hallucinated legal
22  citations in their briefing. In their response to the motion to dismiss, Plaintiffs
23  cite non-existent quotes from each of the four different cases that they cite:
24  *Medrano v. Flagstar Bank,* 704 F.3d 661 (9th Cir. 2012), *Guerra v. Just Mortgage,*
25  *Inc.,* 2013 WL 1561114 (D. Nev. Apr. 12, 2013), *Collins v. Union Fed. Sav. & Loan*
26  *Ass'n,* 99 Nev. 284, 304 (1983), and *Chapman v. Deutsche Bank Nat'l Trust Co.,*
27  129 Nev. 314 (2013). In their "Motion for Clarification," (ECF No. 50) Plaintiffs
28  fabricated an entire case: *Estate of Bowles v. Comm'r,* 608 F. Appx. 693 (9th Cir

4

2015) in fact cites to *United States v. Martinez*, 608 Fed. Appx. 692, 693 (10th Cir. 2015).

The Court warns Plaintiffs that should any subsequent filing contain similar issues, they may be sanctioned, and costs and fees may be imposed.

**a. Standing**

Defendant argues that despite being named individually, Plaintiffs are still attempting to represent the Trust without licensed counsel, a violation of NRS 7.28. (ECF No. 36 at 6.) Defendant also argues that Mr. Coleman lacks standing to raise claims because he is neither the borrower on the loan nor owner of the property. (*Id.*) Plaintiffs do not counter these arguments in their response. (ECF No. 41.)

A trust must be represented by a licensed attorney in Nevada state courts and federal court. *Guerin v. Guerin*, 116 Nev. 210, 214 (2000); *Salman v. Newell*, 110 Nev. 1333, 1335 (1994) (holding that the trustee could not represent the trust as a non-attorney, nor could the trust proceed in proper person); *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 698 (9th Cir. 1987). Courts have interpreted the Ninth Circuit's decision in *CE Pope Equity Trust* as permitting a trustee to represent a trust pro se in federal court only where the trustee demonstrates that she is the sole "beneficial owner" of the trust's claims. *Sundby v. San Diego Cnty Sheriff's Dept.*, No. 3:24-cv-1535-WQH-MSB, 2025 WL 1557323, *4 (citing *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)). Whether an individual is the "beneficial owner" of a trust depends on whether the individual has "rights of ownership to the trust assets, res, or corpus." *Wills v. Bank of New York Mellon*, No. 3:22-cv-02005-HZ, 2023 WL 4146107, at *2 (D. Or. Jun. 22, 2023). Settlors of a revocable living trust are the beneficial owners. *Amonette v. IndyMac Bank, F.S.B.*, 515 F.Supp.2d 1176, 1185 (D. Haw. 2007).

The Court takes judicial notice of the fact that Plaintiffs' property is held by the Coleman Family Revocable Living Trust ("the Trust"). (ECF No. 37, Ex. 5;

ECF No. 7.) Plaintiff Sahar Lewis is the grantor and trustee of the Trust. (ECF No. 36-5 at 4, 7.) Because Plaintiffs are the settlors of the Trust, they are the sole beneficial owners of the trust res and can sue for the Trust's claims.

### b. Failure to State a Claim

Defendant argues that Plaintiffs fail to state a claim because their amended complaint provides no detail regarding the timing, amount, or nature of an alleged payment satisfying their mortgage debt, offer no factual basis to support the conclusion that the Defendant's actions were unlawful. (ECF No. 36 at 2.) Plaintiffs claim that they "tendered a discharge package including a negotiable instrument, USPS proof of service, and a Qualified Written Request" to PNC, and that it was wrongfully rejected. (ECF No. 41.)

### i. Breach of Contract

Defendant argues that Plaintiffs' allegations for breach of contract are based on an impermissibly vague and unsupported allegation of tender that cannot support a claim for accord and satisfaction or full payoff. (ECF No. 36 at 9-10.) Plaintiffs do not directly address their breach of contract claim in their response. (ECF No. 41.)

In order to state a claim for breach of contract, Plaintiffs must allege (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiffs; (3) material breach by the defendant; and (4) damages. *Padilla Const. Co. of Nevada v. Big-D Const. Corp.*, 132 Nev. 1014, *1 (citing *Laguerre v. Nevada System of Higher Educ.*, 837 F.Supp.2d 1176, 1180 (D. Nev. 2011)). To state a claim for accord and satisfaction of a contract, Plaintiffs must allege (1) a bona fide dispute over an unliquidated amount; (2) a payment tendered in full settlement of the entire dispute; and (3) an understanding by the creditor of the transaction as such, and acceptance of the payment. *Pierce Lathing Co. v. ISEC, Inc.*, 114 Nev. 291, 298 (1998); *Thurmond v. United Wholesale Mortgage, LLC*, No. 2:24-cv-01018-GMN-EJY, 2025 WL 89609 at *2 (D. Nev. Jan. 13, 2025).

6

Plaintiffs did not respond to any of Defendant's arguments on breach of contract and have not provided any information about what the "negotiable instrument" that they allegedly provide entails. (ECF No. 41.) At the hearing for their emergency motion, Plaintiffs confirmed that the last monthly mortgage payment to Defendant occurred before April 2024. (ECF No. 45 at 4.) Plaintiffs failed to allege or provide any evidence that they actually tendered payment to Defendant for the full balance of their mortgage to discharge their obligations. Their statements that they tendered a discharge package are conclusory and lack sufficient factual matter to state a claim. Plaintiffs also do not make any specific allegations about an alleged dispute and agreement that would satisfy the standards for accord and satisfaction.

Because Plaintiffs' pleading fails to meet the standard for performance under a Nevada state breach of contract claim and an agreement and payment tendered in settlement of a dispute under accord and satisfaction, the Court dismisses these claims.

### ii. Securities Fraud

Defendant argues that Plaintiffs' claim for securities fraud is legally baseless because the statutes that Plaintiffs rely on are inapplicable to their claims. (ECF No. 36 at 10.) Plaintiffs counter that the complaint "alleges the loan was securitized without proper disclosure or trust assignment, resulting in material misrepresentations and omissions in violation of the Securities Act . . ." and is "sufficient to survive dismissal." (ECF No. 41 at 2.)

Plaintiffs appear to allege securities fraud claims under 15 U.S.C. §§ 77q and 78j and NRS Chapter 90. Because there is no private right of action under 15 U.S.C. § 77(q), *In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349, 1355 (9th Cir. 1987), Plaintiffs' claim under this theory is dismissed.

To recover damage for violations of section 10(b) of the Securities Exchange

Act of 1934, 15 U.S.C. § 78(j), a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014). To show a material misrepresentation the plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78(u)-4(b)(1). To show scienter, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78(u)-4(b)(2)(A).

Though Plaintiffs do not state which section of NRS Chapter 90 they are suing under, they appear to be claiming that Defendant made "an untrue statement of material fact or omit to state a material fact necessary in order to make statements made not misleading" in connection with the "offer to sell, sale, offer to purchase or purchase of a security" under NRS § 90.570. (*See* ECF No. 27 at 3 ("PNC knowingly concealed material facts"); ECF No. 41 ("loan was securitized without proper disclosure or trust assignment *resulting in material misrepresentations and omissions* in violation of Securities Act" (emphasis added)).) Contrary to Defendant's motion, under NRS § 90.660, "a person who offers or sells a security in violation of . . . subsection 2 of NRS § 90.570 . . . is liable to the person purchasing the security," and therefore, a private right of action is available under the statute. *McDonald v. Palacios*, 710 Fed.Appx. 318, 319 (9th Cir. 2018).

Both of these securities fraud claims require a connection between the misrepresentation or omission and the purchase or sale of a security. *Tai-Si Kim v. Kearney*, 838 F.Supp.2d 1077, 1095 (D. Nev. 2012). A note secured by a mortgage on a home is not a security. *SEC v. Wallenbrock*, 313 F.3d 532, 536 n.3 (9th Cir. 2002) (judicially-crafted list of exceptions to security instruments

8

1  include promissory notes secured by a mortgage on a home); *Corales v. Flagstar Bank, FSB*, 822 F.Supp.2d 1102, 1112 (W.D. Wash. 2011) (citing *Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990)) (plaintiff's note secured by a deed of trust on their home is not properly viewed as a security, and is therefore not subject to the Securities Act of 1933 or Exchange Act of 1934); *State v. Friend*, 118 Nev. 115, 121 (Nev. 2002) (a note secured by a mortgage on a home is not a security). Because a deed of trust is not a security, Plaintiffs do not have a viable claim under either federal or state securities fraud statutes.

Even if the deed of trust was a security, Plaintiffs have not met the heightened pleading standard required under Nevada nor Federal Rules of Civil Procedure 9(b). *See.* Nev. R. Civ. P. 9(b); Fed. R. Civ. P. 9(b). "The circumstances that must be detailed include averments to the time, the place, the identity of the parties involved, and the nature of the fraud...." *Brown v. Kellar*, 97 Nev. 582, 583–84 (1981); *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) (applying heightened standard to securities fraud claims).

Plaintiffs allege that Defendants "knowingly concealed material facts about the securitization and dishonor of Plaintiffs' negotiable instrument," "misrepresented the ownership and transfer status of the debt," "used deceptive means in violation of federal and state securities laws." (ECF No. 27.) In their response, they claim that the "loan was securitized without proper disclosure or trust assignment, resulting in material misrepresentations and omissions in violation of the Securities Act." (ECF No. 41 at 2.) Plaintiffs neither state how the alleged misrepresentations were misleading, nor that the Defendant had the required state of mind to establish scienter. They also do not plead with particularity how they relied on the misrepresentation or omission to their detriment. Therefore, Plaintiffs' claims for securities fraud under state and federal law are dismissed with prejudice, as their deed of trust is not a qualifying

security, and amendment would be futile.

### iii. Wrongful Foreclosure

Defendant argues that Plaintiffs failed to state sufficient facts to meet each of the required elements of a wrongful foreclosure claim. (ECF No. 36 at 10.) Plaintiffs argue that the foreclosure was wrongful because they discharged their obligations and PNC foreclosed without proper legal authority or producing evidence of default. (ECF No. 41 at 2.) In their operative complaint, however, Plaintiffs only argue one theory of foreclosure: that they "tendered payment in full and initiated dispute procedures under federal law, which PNC failed to honor." (ECF No. 27.)

To state a claim for wrongful foreclosure, Plaintiffs must allege that no breach of condition of the deed of trust existed at the time the power of sale was exercised, or that the foreclosing party otherwise had no legal right to foreclose. *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983). The "material issue" of a wrongful foreclosure claim is whether the mortgagor was in default at the time of foreclosure. *Id.* It is Plaintiffs' burden to prove that the foreclosure was against state law. *Wensley v. First Nat. Bank of Nevada*, 874 F.Supp.2d 957, 965 (D. Nev. 2012).

Plaintiff's statements that the "debt was satisfied, PNC had no authority to foreclose, and Plaintiffs notified all parties of the discharge" are conclusory and lack legal authority. (ECF No. 27.) This is a "mere recitation" of the elements of wrongful foreclosure, without specific facts. *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to allege a necessary element of wrongful foreclosure, namely, that they were not in default at the time of foreclosure. Rather, Plaintiffs have acknowledged to this Court that they stopped paying their mortgage before April 2024 and have paid nothing since. (*See* ECF No. 45 at 4 (order finding that Plaintiffs' last monthly mortgage payment to Defendant occurred before April 2024, and they have not discharged their obligations).)

10

In their later claim for quiet title, Plaintiffs allege that the foreclosure process was also "defective due to lack of standing, tender denial, and active litigation." Construing a *pro se* litigant's complaint liberally, the Court will consider arguments that Defendant lacked the legal authority to foreclose.

Plaintiffs are not more successful under this theory. To enforce the obligation of a deed of trust by nonjudicial foreclosure and sale under Nevada state law, "the deed and the note must be held together" at the time of foreclosure, the trustee must give notice by recording a notice of default and election to sell and serve the grantor with a copy of that notice, along with an election-of-mediation form, and after at least three months have passed from the recording of the notice of default, the trustee must give notice of the sale. NRS § 107.080-086; *Edelstein v. Bank of N.Y. Mellon*, 128 Nev. 505, 513-14 (2012). Separation of the note from the deed is "not irreparable or fatal" so long as both documents are "ultimately held by the same party" at the time of foreclosure. *Id.* at 520. Beyond stating that Defendant lacked standing, Plaintiffs do not provide any additional evidence that Defendants failed to meet any of the statutory requirements for a nonjudicial foreclosure in support of their claim. Therefore, Plaintiffs' claim for wrongful disclosure is dismissed.

### iv. Quiet Title

Defendant argues that Plaintiffs cannot state a claim for quiet title because it rests entirely on a successful claim for wrongful foreclosure, and regardless, the buyer at the foreclosure sale would now be the party with claim to title. (ECF No. 36 at 12.) Plaintiffs do not offer any opposition to this argument, merely restating that the foreclosure was unlawful and the debt discharged. (ECF No. 41 at 2.)

To state a claim for quiet title, Plaintiffs must allege a present adverse claim to title. NRS § 40.010; *Chapman v. Deutsche Bank Nat'l Trust Co.*, 129 Nev. 314, 318 (Nev. 2013). "A plaintiff's right to relief therefore depends on superiority of

title." *Id.* at 319.

Plaintiffs have failed to state with particularity any facts that demonstrate that they have superior title over Defendant. Therefore, the claim is dismissed.

    **v.**    **RESPA**

Defendants argue that Plaintiffs' references to the Real Estate Settlement Procedures Act ("RESPA"), including that it failed to respond to a Qualified Written Request ("QWR") are unsuccessful first, because Plaintiffs did not argue a separate cause of action under the statute in their operative complaint, and second, because they fail to state sufficient facts to meet the elements. (ECF No. 36 at 13.) Plaintiffs claim that they made a QWR that identified servicing issues and sought documentation verifying the debt. (ECF No. 41 at 1.) The Court notes that Plaintiffs did not formally make a RESPA claim in the operative complaint, which mentions the statute and an alleged QWR. (ECF No. 27.) Construing the filings of *pro se* litigants liberally, the Court considers Plaintiffs' RESPA claim.

RESPA places duties and restrictions on mortgage lenders, services, and other entities that deal with residential mortgages. Section 2605 of the statute requires lenders to respond to certain inquiries (qualified written requests) from the borrower. *See* 12 U.S.C. § 2605(e). A Qualified Written Request must (1) be a written communication, and (2) include "the name and account of the borrower," and "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(i)-(ii). "Servicing" means "receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." *Id.* § 2605(i)(3). Questioning the validity of the loan does not meet the standard for a QWR. *Consumer Solutions REO, LLC, v. Hillery,* 658 F.Supp.2d 1002, 1014 (N.D. Cal. 2009).

12

To state a claim under RESPA, a plaintiff must allege both a violation under RESPA and pecuniary damages caused. *Banares v. Wells Fargo Bank, NA*, 681 Fed.Appx. 638, 641 (9th Cir. 2017). Damages "involve concrete harm caused by the RESPA violation itself, not harm generally resulting from a plaintiff's default and foreclosure process." *Tamburri v. Suntrust Mortg., Inc.*, 875 F.Supp.2d 1009, 1014 (N.D. Cal. 2012). RESPA does not provide for injunctive relief and therefore cannot be relied upon to stop a foreclosure. *Id.* at 1013.

Plaintiffs alleged that they made a QWR with information related to servicing that "identified account servicing issues and sought documentation verifying the debt." (ECF No. 41.) They claim that Defendant's response "with a payment history and copy of the Deed of Trust" "fail[ed] to validate the debt or provide a full accounting," and was therefore insufficient to meet the requirements. (ECF No. 36.)

Plaintiffs do not clearly allege what specific issues they are challenging with regards to the servicing, compared to the validity, of the loan. Even assuming they alleged a valid servicing issue, Plaintiffs also have not shown what harm they suffered by allegedly deficient responses to their requests. Plaintiffs do not argue that they relied on Defendant's responses or lack thereof to delay payments. Plaintiffs statements to the Court suggest they would still have been in default and subject to foreclosure absent Defendant's alleged non-response. (ECF No. 45 at 4.) *Banares*, 681 Fed.Appx. at 641; *Tamburri*, 875 F.Supp.2d at 1014. Plaintiffs have therefore failed to state a claim under RESPA.

### c. Plaintiffs' "Motion for Clarification" and "Affidavit in Support of Verified Complaint"

In their "Motion for Clarification" (ECF No. 50) and "Affidavit in Support of Verified Complaint" (ECF No. 85), Plaintiffs claim that their claims have always been based on theories of "fraudulent lack of standing, rooted in securitization fraud, concealment of material facts, and noncompliance with trust and

securities law, including the absence of a valid recorded assignment or Pooling and Servicing Agreement ("PSA") disclosure." (ECF No. 50.) They also make additional claims for "unlawful entry and forcible removal," due process violations, "emotional, psychological, and physical harm," "misconduct by officials and opposing counsel," and "irreparable harm and damages." (ECF No. 80.) These claims, to the extent they are not already made in the operative complaint, cannot be argued in subsequent motions absent leave to amend. LR 15-1.

### IV. Conclusion

It is therefore ordered that Defendant's motion to dismiss (ECF No. 36) is GRANTED.

It is further ordered that Plaintiffs' claim for securities fraud is dismissed with prejudice.

It is further ordered that Plaintiffs' claims for breach of contract, wrongful foreclosure, quiet title, and RESPA are dismissed without prejudice.

It is further ordered that Plaintiffs' outstanding motions (ECF Nos. 38, 50, 69, 70, 71, 75) are DENIED as moot.

Dated this 5th day of November 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE